**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NICOLE ASENCIO, on behalf of herself and all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>THE PROCTOR & GAMBLE COMPANY,<br><br>　　　　　　　　　　Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

　　　　Plaintiff Nicole Asencio ("Plaintiff") brings this action on behalf of herself and all others similarly situated against The Proctor & Gamble Company ("Proctor & Gamble," "P&G" or "Defendant") for the manufacture, marketing, and sale of various aerosol dry conditioner spray products identified below that are contaminated with the carcinogenic impurity benzene. Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to the Plaintiff herself, which are based on personal knowledge.

**FACTS COMMON TO ALL CLAIMS**

　　　　1.　　　This is a class action lawsuit against Defendant for the manufacture and sale of aerosol dry conditioner and dry shampoo spray products sold under the Pantene, Aussie, Herbal Essences, Waterless, Old Spice, and Hair Food brands names[1], (collectively, the "Products" or "Aerosol Products"), all of which suffer from an identical defect. The Products are defective because they contain benzene, a carcinogenic chemical impurity that has been linked to leukemia

---

[1] The list of products includes products of similar names varying in sizes. The list of products is not exclusive as discovery may lead to additional products which were contaminated. The UPC Code and list of products can be found at https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/pg-issues-voluntary-recall-aerosol-dry-conditioner-spray-products-and-aerosol-dry-shampoo-spray (last accessed December 30, 2021).

1

and other cancers. The Products are not designed to contain benzene (nor is the presence of benzene disclosed in any way on the Products' labels), and in fact no amount of benzene is acceptable in aerosol dry shampoo or dry conditioner products such as the ones manufactured by Defendant. The presence of benzene in the Aerosol Products renders the products unsafe and worthless, and unsuitable for their principal and intended purpose.

2. Further, the presence of benzene in the Aerosol Products renders them adulterated and misbranded under the Food, Drug and Cosmetics Act ("FDCA"). As a result, the Aerosol Products are illegal to sell under federal law and therefore are worthless. Notably, Plaintiff does not bring claims under the FDCA and does not seek to enforce federal law in this lawsuit. Instead, Plaintiff brings state law causes of action which arise regardless of the Products' classification under the FDCA. That the Products are in fact adulterated and misbranded simply underscores the unmerchantable nature of the Products, in addition to the fact that they are recalled.

3. Benzene is a component of crude oil, gasoline, and cigarette smoke, and is one of the elementary petrochemicals. The Department of Health and Human Services has determined that benzene causes cancer in humans. Likewise, the Food and Drug Administration ("FDA") lists Benzene as a "Class 1 solvent" that "should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity." The World Health Organization ("WHO") and the International Agency for Research on Cancer ("IARC") have classified benzene as a Group 1 compound, defining it as "carcinogenic to humans."[2] In 2011, the United States Environmental Protection Agency introduced regulations that lowered limits on benzene in gasoline due to its carcinogenic nature.[3] California's Proposition 65 Fact Sheet for benzene states, "[b]enzene is on the Proposition 65 list because it can cause cancer and birth defects or other reproductive harm. Exposure to benzene can cause leukemia. Exposure to

---

[2] https://monographs.iarc.who.int/list-of-classifications
[3] https://www.epa.gov/gasoline-standards/gasoline-mobile-source-air-toxics

benzene during pregnancy may affect development of the child. It may also harm the male reproductive system."[4]

4. According to the American Cancer Society:

> IARC classifies benzene as "carcinogenic to humans," based on sufficient evidence that benzene causes acute myeloid leukemia (AML). IARC also notes that benzene exposure has been linked with acute lymphocytic leukemia (ALL), chronic lymphocytic leukemia (CLL), multiple myeloma, and non-Hodgkin lymphoma.[5]

5. According to the National Institute for Occupational Safety and Health, humans can become exposed to benzene through "inhalation, skin absorption, ingestion, skin and/or eye contact." (emphasis added). Skin absorption is particularly concerning as there have been multiple FDA studies showing that structurally similar chemicals in sunscreen products are found in the blood at high levels after application to exposed skin.[6] Absorption of benzene through inhalation, such as through the use of Defendant's Aerosol Products, can be even more dangerous and pose more risks than skin absorption.

6. On December 17, 2021, Defendant, in conjunction with the FDA, issued a product recall of all of its Aerosol Products due to the undisclosed presence of benzene in the products.[7] As stated by Defendant in its recall notice, "Benzene is classified as a human carcinogen. Exposure to benzene can occur by inhalation, orally, and through the skin and it can result in cancers including leukemia and blood cancer of the bone marrow and blood disorders which can be life-threatening." Further, the recall notice concedes that "[w]hile benzene is not an ingredient in any of our products, our review showed that unexpected levels of benzene came from the propellant that sprays the product out of the can. We detected benzene in aerosol dry

---

[4] https://www.p65warnings.ca.gov/fact-sheets/benzene

[5] American Cancer Society. Benzene and Cancer Risk (January 5, 2016) (https://www.cancer.org/cancer/cancer-causes/benzene.html)

[6] VALISURE, VALISURE CITIZEN PETITION ON HAND SANITIZER PRODUCTS CONTAINING BENZENE CONTAMINATION AND OTHER SIGNIFICANT ISSUES, Mar. 24, 2021, https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Hand-Sanitizer-v4.14.pdf (the "Valisure Petition"), at 2.

[7] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/pg-issues-voluntary-recall-aerosol-dry-conditioner-spray-products-and-aerosol-dry-shampoo-spray

shampoo spray products and aerosol dry conditioner spray products." "The recalled products were distributed nationwide in the United States through retail outlets and online." Consumers were instructed to "stop using and appropriately discard the affected aerosol dry conditioner spray products and aerosol dry shampoo spray products."

7. Defendant feigned the opportunity for its customers to obtain refunds for the Aerosol Products, but has made it virtually impossible to do so and has not done anything – other than the issuance of the recall notice through the FDA itself – to notify affected customers of their right to refunds. For instance, the recall notice states that "Consumers can visit www.pantene.com, www.aussie.com, www.herbalessences.com, www.hairfood.com, www.oldspice.com, or www.waterlesshaircare.com, for more information about the impacted products and to learn how to receive reimbursement for eligible products." But navigating through those links to Defendant's recall pages makes it clear that the recall is largely illusory. For instance, for consumers that purchased 6 or more of the Aerosol Products, Defendant requires customers to submit proof of purchase[8] – otherwise, no refund is provided at all. For "small-ticket" items such as the Aerosol Products, however, many, if not the vast majority, of class members do not have proof of purchase of Products they bought over the counter. And, the Aerosol Products are the types of everyday hygiene products – such as soap, toilet paper, and toothpaste – that a large percentage of consumers purchase routinely, such that a significant percentage of class members purchased more than six products and will not be able to obtain any refund.

8. Defendant does not disclose the actual or potential presence of benzene in its Aerosol Products at all on the Product's labeling, or in any advertising or website promoting the Product. The presence of benzene renders the Products both adulterated and misbranded under the FDCA. The Products are misbranded because their labeling is "false" and "misleading" because it does not disclose the presence of benzene.

9. Plaintiff brings claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Products for (I) unjust enrichment; (II) violation of

---

[8] https://pgconsumersupport.secure.force.com/ContactUs/CF?brand=Pantene3&c=us&lang=en

4

New York's General Business Law, GBL § 349; and (III) violation of New York's General Business Law, GBL § 350.

## PARTIES

10.     Plaintiff Nicole Asencio is, and at all times relevant to this action has been, a resident of the Bronx, New York.  Plaintiffs Asencio has purchased the Products for her personal use.  Plaintiff Asencio purchased Aussie Dry Shampoo and Pentene Dry Shampoo & Conditioner (each of which is part of the recalled Aerosol Products) multiple times from CVS stores in New York within the past couple of months.  Plaintiff Asencio purchased Defendant's Products in reliance on the Products' labels, and believed that the Products were safe to use as dry shampoo and conditioners.  Plaintiff Asencio would not have purchased the Products had she known that the Products were contaminated with harmful levels of benzene and that there was a significant risk that the Products were unfit to perform their intended purpose and were dangerous.  Plaintiff Asencio paid a price premium in the amount of the full purchase price of the Products, or at minimum of the difference between the Products as represented and the Product actually received.  The Products were worthless, or at minimum worth substantially less than the purchase price, because they suffered from the Defect and were contaminated with benzene.

11.     Defendant The Proctor & Gamble Company is incorporated in the State of Ohio, with a principal place of business in Cincinnati, Ohio.  Defendant manufactures, markets, and distributes the Products throughout the United States, including in New York.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

13.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within New York such that Defendant has significant, continuous, and pervasive contacts with the State of New York.  Defendant is registered to do business in the State of New York.

5

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District, a substantial part of the events giving rise to Plaintiff's claims took place within this District because Plaintiff purchased the Products in this District and resides in this District.

## **CLASS ALLEGATIONS**

15. Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Products (the "Class"). Excluded from the Class are persons who made such purchases for purpose of resale.

16. Plaintiff also seeks to represent a subclass of all Class Members who purchased the Products in the State of New York (the "New York Subclass" or "Subclass").

17. At this time, Plaintiff does not know the exact number of members of the aforementioned Class and Subclass ("Class Members" and "Subclass Members," respectively); however, given the nature of the claims and the number of retail stores in the United States selling Defendant's Products, Plaintiff believes that Class and Subclass members are so numerous that joinder of all members is impracticable.

18. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include, but are not limited to:

    (a)    whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

    (b)    whether Defendant's conduct was unfair and/or deceptive;

    (c)    whether Defendant has been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Class;

6

      (d)      whether Plaintiff and the Class have sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages.

19.      With respect to the New York Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated New York's General Business Law sections 349 and 350.

20.      Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased, in a typical consumer setting, Defendant's Products, and Plaintiff sustained damages from Defendant's wrongful conduct.

21.      Plaintiff will fairly and adequately protect the interests of the Class and Subclass and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the Class or the Subclass.

22.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

23.      The prosecution of separate actions by members of the Class and the Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class and the Subclass even where certain Class or Subclass members are not parties to such actions.

## COUNT I
### Unjust Enrichment
**(On Behalf Of Plaintiff And The Nationwide Class And New York Subclass)**

24.      Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

25.      Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

26.      Plaintiff and Class members conferred benefits directly on Defendant by purchasing the Products, and Defendant unjustly and inequitably retained the benefits because it

7

retained profits and the revenue from the sale of the Products even though the Products cannot be used for their principal intended purpose and are worthless due to the presence of benzene.

27. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant failed to disclose that the Products were unfit for use as dry shampoo and dry hair conditioner products, or that the Defect was substantially likely to manifest through the customary and intended use of the Products. These omissions caused injuries to Plaintiff and Class members because they would not have purchased the Products if the true facts were known.

28. Retention of those moneys also is unjust and inequitable because, as alleged above, Defendant commenced an ineffective recall that was calculated to result in few returns, and generally no refunds, thereby protecting profits and revenue Defendant collected from selling the defective products.

29. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution and other relief to Plaintiffs and Class members for its unjust enrichment, as ordered by the Court.

## COUNT II
### Violation Of New York's General Business Law § 349
### (On Behalf Of Plaintiff And The New York Subclass)

30. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

31. Plaintiff brings this claim individually and on behalf of the proposed New York Subclass against Defendant.

32. New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

33. In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

34. Plaintiff and members of the New York Subclass are consumers who purchased products from Defendant for their personal use.

35. By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, representing that the Products were dry shampoo and dry conditioner Products that could be used for those purposes, and by failing to disclose the presence of benzene in the Products.

36. The foregoing deceptive acts and practices were directed at consumers.

37. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics of the Products to induce consumers to purchase same. Defendant's omissions of fact were material because if Plaintiff and members of the New York Subclass were apprised of the true nature of the Products, namely that the Products contained benzene and were unsafe and unfit for use, they would have been aware of that fact and would not have purchased the Products.

38. By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

39. Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and members of the New York Subclass have sustained from having paid for and consumed Defendant's products.

40. As a result of Defendant's violations, Plaintiff and members of the Subclass have suffered damages because: (a) they would not have purchased the Products on the same terms if they knew that the Products contained benzene, and are not generally recognized as safe; (b) they would not have purchased the Products or would not have purchased them on the same terms if they knew that the Products could not be used as dry shampoo or dry conditioner products; (c) they paid a price premium for the Products due to Defendant's omission of the fact that the Products contained benzene and the misrepresentations that the Products could be used as dry shampoo and dry conditioner products; and (d) the Products do not have the characteristics, ingredients, uses, benefits, or quantities as promised.

41.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to recover her actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
### Violation Of New York's General Business Law § 350
### (On Behalf Of Plaintiff And The New York Subclass)

42.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

43.     Plaintiff brings this claim individually and on behalf of the proposed New York Subclass against Defendant.

44.     New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

45.     Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

46.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

47.     Defendant engaged in a material misrepresentation by representing that the Products were dry shampoo and conditioner Products that were fit for their intended use and contained only the active ingredients stated on the label.  Defendant materially omitted the true facts regarding the Products, namely that they contained benzene and were unsafe and unfit for their intended use.

48.     Defendant's false, misleading, and deceptive statements and representations of fact and omissions were and are directed to consumers.

49.     Defendant's false, misleading, and deceptive statements and representations of fact and omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

50.     Defendant's false, misleading, and deceptive statements and representations of fact and omissions have resulted in consumer injury or harm to the public interest.

51. As a result of Defendant's false, misleading, and deceptive statements and representations of fact and omissions, Plaintiff and the Subclass have suffered and continue to suffer economic injury.

52. As a result of Defendant's violations, Plaintiff and members of the Subclass have suffered damages because: (a) they would not have purchased the Products on the same terms if they knew that the Products contained benzene, and are not generally recognized as safe; (b) they would not have purchased the Products or would not have purchased them on the same terms if they knew that the Products could not be used as dry shampoo or dry conditioner products; (c) they paid a price premium for the Products due to Defendant's omission of the fact that the Products contained benzene and the misrepresentations that the Products could be used as dry shampoo and dry conditioner products; and (d) the Products do not have the characteristics, ingredients, uses, benefits, or quantities as promised.

53. On behalf of herself and other members of the New York Subclass, Plaintiff seeks to recover her actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

    a. For an order certifying the nationwide Class and the Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclasses and Plaintiff's attorneys as Class Counsel to represent the Class and Subclasses members;

    b. For an order declaring the Defendant's conduct violates the statutes referenced herein;

    c. For an order finding in favor of Plaintiff, the nationwide Class, and the Subclasses on all counts asserted herein;

    d. For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

11

e.  For pre-judgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of monetary relief;

g.  For an order awarding Plaintiff and the Class and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated: December 30, 2021                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Andrew J. Obergfell*
  Andrew J. Obergfell

Andrew J. Obergfell
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: aobergfell@bursor.com

*Attorneys for Plaintiffs*